### KLINGMAN v. QUINCY et al.

(Supreme Court, Appellate Term. December 13, 1898.)

CONTRACT—EVIDENCE OF BREACH—ABANDONMENT.

Defendant contracted to do certain work on a building for a specified sum, without security, but, shortly after beginning the work, refused to continue, unless security was furnished, when it was arranged that both plaintiff and defendant should deposit a certified check as security, and that a contract should be executed to that effect, whereupon defendant immediately resumed the work; but, plaintiff subsequently refusing to sign the agreement or give security, defendant abandoned it, and plaintiff procured another to complete it at an advanced price. *Held* not sufficient to show a modification of the original contract, and that defendant, having wrongfully abandoned it, was liable.

Appeal from municipal court, borough of Manhattan, Seventh district.

Action by Frederick Klingman against Samuel Quincy and another. From a judgment in favor of defendants, plaintiff appeals. Reversed.

Argued before BEEKMAN, P. J., and GILDERSLEEVE and GIE-
GERICH, JJ.

M. Jesse Henry (A. B. Schleimer, of counsel), for appellant.
H. J. Crawford, for respondents.

PER CURIAM. The plaintiff, a builder, entered into a contract
with the defendants, as contractors, whereby the latter agreed to
do the masonwork on the building to be erected on the northwest
corner of the Boulevard and Ninety-Seventh street, in the city of
New York, for the sum of $2,300. Shortly after entering upon the
performance of the contract the defendants refused to proceed
any further with the work, unless payment thereof was secured,
because, as claimed, the premises in question were heavily mort-
gaged, and a lien of $532.20 against the plaintiff had been filed in
the clerk's office of the county of New York on the same day the
contract was signed. After some discussion it was arranged that
a certified check for the stipulated sum, as security for the faithful
performance of the contract in question, be deposited with their
respective banks by each of the parties thereto, and that an agree-
ment to that effect should be drawn up and signed by the parties.
The defendants, it seems, were ready and willing to sign such agree-
ment, and to deposit their certified check for said sum, but the
plaintiff was not; and after securing a number of postponements,
with a view of carrying out the arrangement, he finally informed
the former that, as the contract did not require him to give any
security, he would not do so, and insisted upon their performing
the same without it, stating that, unless they did so, "he would find
somebody that would." In the meantime the defendants had re-
sumed work upon the building, but, upon the plaintiff's refusal to
make and execute the proposed new agreement, they abandoned
the same, whereupon the plaintiff made an agreement with one
Andrew Boese for the completion of the work referred to, for which
he was to receive, and did receive, when the work was finished,
the sum of $2,600. The plaintiff then brought this action to re-
cover the sum so paid in excess of said contract price. The plead-
ings were oral. The answer was a general denial, and set up a
counterclaim for $214.26 for labor and materials rendered and
furnished by the defendants in reliance on the plaintiff's alleged
agreement to give security. The trial justice gave judgment for
the defendants in the sum last mentioned, and the plaintiff has
brought on this appeal.

A careful reading of the record convinces us that the conclusion
so reached is not warranted by the evidence. The justice evidently
assumed that the proposition to deposit checks for the faithful
performance of the contract had been definitely and positively as-
sented to by the plaintiff. However, the testimony introduced on
behalf of the defendants, viewed in its most favorable light, shows
at most an agreement on the part of the plaintiff to sign the paper
writing in question, and not a positive agreement, independent

of any writing, to produce such check. According to the testimony of defendant Crawford, the agreement was drawn up, and a number of appointments were made for the purpose of signing the same and producing the certified checks, but the plaintiff failed to put in an appearance, and after some effort the witness succeeded in finding- the plaintiff, and was informed by him that he would not give security. The father of this last witness testified that the plaintiff said "he would sign the agreement, and put up a certified check"; and the testimony of the defendant Quincy was to the same effect, in the following language:

"Q. Did Klingman promise to sign that agreement? A. Yes, sir. Q. Did he promise to put up certified checks as security? A. Yes, sir. Q. Did you continue on the work until he finally declined to give any security? A. Yes, sir; up to the time Boese took possession,—as fast as the weather would allow."

It thus appears that the defendants resumed work upon the building without having secured the plaintiff's signature to the proposed agreement, and the deposit by him of the security referred to. Under these circumstances, and in the absence of proof tending to show that the plaintiff requested the defendants to renew the work, and that in consequence of such resumption he would give the security referred to in the proposed agreement, the judgment is clearly erroneous. The contract did not require either of the parties to give or furnish security for its faithful performance, and hence the defendants' abandonment of the work for the failure of security was not justified, in the absence of a valid modification thereof in that respect. The defendants having abandoned the contract on their part, and performance of the same not having been waived or released by the plaintiff, they must suffer all the consequences legally resulting from their default.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.